IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID DITTER, | ) | |
| | ) | |
| Plaintiff, | ) | 4:16CV3159 |
| | ) | |
| v. | ) | |
| | ) | |
| NEBRASKA DEPARTMENT OF | ) | **MEMORANDUM** |
| CORRECTIONAL SERVICES, | ) | **AND ORDER** |
| SCOTT FRAKES, in his individual & | ) | |
| official capacity, RANDY T. KOHL, | ) | |
| MD, in his individual & official | ) | |
| capacity, CORRECT CARE | ) | |
| SOLUTIONS, RONALD OGDEN, | ) | |
| DDS, in his individual & official | ) | |
| capacity, and LISA MATHEWS, in | ) | |
| her individual & official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, an inmate at the Tecumseh State Correctional Institution ("TSCI"), claims that the dental care he received there constituted cruel and unusual punishment under the Eighth and Fourteenth Amendments because Defendants were deliberately indifferent to his serious medical needs. Specifically, Plaintiff alleges that Defendants failed to provide him with dental implants, ground down some of his healthy teeth, and—as to Correct Care Solutions—maintained a policy or custom of deliberately disregarding state prisoners' objectively serious dental needs in order to increase its profit.

Plaintiff requests injunctive and monetary relief against defendants Nebraska Department of Correctional Services ("NDCS"), Frakes, Kohl, and Mathews, and

monetary relief against defendants Correct Care Solutions ("CCS") and Ogden.[1] Pending before the court are Defendants' Motions for Summary Judgment. (Filing No. 81; Filing No. 84.)

# I. STANDARD OF REVIEW

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue, but to decide whether there is a genuine issue for trial. *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 949 (8th Cir. 2012). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id*. Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

---

[1]Plaintiff's claims for injunctive relief against defendants CCS and Ogden were previously dismissed as moot because CCS—through which Ogden provided dental services to TSCI inmates—is no longer under contract with the State of Nebraska and no longer provides services at the TSCI, making it impossible for these defendants to perform actions required by an injunction. (Filing No. 55.) Plaintiff filed a Second Amended Complaint (Filing No. 62) requesting money damages from all defendants.

A party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial, and must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quotation and citation omitted); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-60 (1970).

## II.  UNDISPUTED MATERIAL FACTS

### A.  Facts Regarding NDCS Defendants

1.    Plaintiff David Ditter was, at all times relevant to this action, an inmate at the TSCI. (Filing No. 1 at CM/ECF p. 1.)

2.    Defendant Dr. Randy Kohl was, at times relevant to this case, the Medical Director for the NDCS. (Filing No. 1 at CM/ECF p. 8.)

3.    Defendant Lisa Mathews was, at times relevant to this case, the ADA Coordinator for the NDCS. (Filing No. 1 at CM/ECF p. 8.)

4.    Defendant Scott Frakes was, at times relevant to this case, the Director of the NDCS. (Filing No. 1 at CM/ECF p. 8.)

5.    Defendant Dr. Ronald Ogden, DDS, previously provided dental services to inmates at the TSCI under contracts with CCS. (Filing No. 85-1, Aff. Ronald Ogden, DDS ¶¶ 1-4.) On July 20, 2014, Dr. Ogden issued Plaintiff an upper complete denture. (Filing No. 1 at CM/ECF p. 4.) Dr. Ogden then adjusted the denture nine different times in 2014 because it was not fitting properly. (Filing No. 1 at CM/ECF p. 4.)

6.    In December of 2015, defendant Dr. Randy Kohl, who at the time was

the Medical Director for the NDCS, received a letter from Plaintiff in which Plaintiff requested dental implants. (Filing No. 83-1, Aff. Dr. Randy Kohl ¶ 4.)

7.      Defendant Kohl responded to Plaintiff's letter and explained that dental implants are not covered by insurance or Medicaid and that the NDCS does not provide them. Defendant Kohl told Plaintiff to work with Dr. Ogden to resolve the issues with his dentures. (Filing No. 83-1, Aff. Dr. Randy Kohl ¶ 5.)[2]

8.      Defendant Kohl received a grievance from Plaintiff in February 2016 in which Plaintiff again stated that he wanted dental implants. Defendant Kohl looked into the matter and determined that dental implants were not medically necessary in Plaintiff's case. (Filing No. 83-1, Aff. Dr. Randy Kohl ¶ 6.)

9.      Defendant Kohl told Plaintiff to work with dental staff to find an alternative solution to the problems with his dentures. (Filing No. 83-1, Aff. Dr. Randy Kohl ¶ 6.)

10.     Dr. Sasek, a licensed dentist employed by the NDCS, saw Plaintiff on August 3, 2017, and August 10, 2017. (Filing No. 83-3, Aff. Dr. Jamie Sasek ¶¶ 1, 4.) Dr. Sasek saw that Plaintiff's upper denture was not fitting properly, so he realigned the denture to see if that would help. (Filing No. 83-3, Aff. Dr. Jamie Sasek ¶ 4.)

11.     In Dr. Sasek's opinion, dental implants are not a medical necessity in Plaintiff's case. (Filing No. 83-3, Aff. Dr. Jamie Sasek ¶ 5.)

12.     Dr. Wellensiek, a self-employed licensed dentist who treats inmates at

_____

[2]Plaintiff attempts to dispute this statement of fact by discussing how Dr. Kohl ignored Plaintiff's complaints about having to use large amounts of denture adhesive each day. Plaintiff's use of denture adhesive is completely irrelevant to this statement of fact.

the TSCI, began providing dental services to Plaintiff in August of 2017. (Filing No. 83-2, Aff. Dr. Todd Wellensiek ¶¶ 1, 4.)

13.    Dr. Wellensiek's opinion on the proper treatment for Plaintiff is that he requires a new upper denture made, along with a lower partial denture. (Filing No. 83-2, Aff. Dr. Todd Wellensiek ¶ 5.)

14.    Dr. Wellensiek does not believe that dental implants are a medical necessity for Plaintiff. Although dental implants can help some patients, they are generally not medically necessary because there are other steps that can be taken—such as realigning the dentures, creating a new denture, or if a patient is having trouble chewing hard foods, they could switch to a soft diet. (Filing No. 83-2, Aff. Dr. Todd Wellensiek ¶ 6.)

15.    Because of Plaintiff's insistence on getting dental implants, Dr. Wellensiek recommended that he be approved for a consultation regarding the implants, not because they were medically necessary, but so the NDCS or an outside oral surgeon could issue the final decision to Plaintiff. (Filing No. 83-2, Aff. Dr. Todd Wellensiek ¶ 7.)

16.    On November 9, 2017, Plaintiff was seen by Dr. Smith, a licensed dentist employed by the NDCS. (Filing No. 83-4, Aff. Dr. Eric Smith ¶¶ 1, 4.)

17.    Dr. Smith was aware that Dr. Deol had approved a consultation between Plaintiff and an outside oral surgeon regarding dental implants based on a recommendation by Dr. Wellensiek. (Filing No. 83-4, Aff. Dr. Eric Smith ¶ 5; Filing No. 83-2, Aff. Dr. Todd Wellensiek ¶ 1.)

18.    In looking into this matter, Dr. Smith realized that while all dental recommendations for outside consultations must go to a committee comprised of dentists, this recommendation was inadvertently sent to the medical committee and

was approved without the input of dentists familiar with dental implants. (Filing No. 83-4, Aff. Dr. Eric Smith ¶ 6.)

19.    Because dental implants are not a medical necessity in Plaintiff's case, and are not provided by the NDCS, and because Plaintiff lacked the funds to pay for the dental implants on his own, Dr. Smith offered to make Plaintiff a new upper denture and a partial lower denture. (Filing No. 83-4, Aff. Dr. Eric Smith ¶ 7.)

20.    There is no notation in Plaintiff's institutional medical records that he has requested a soft-food diet or been advised to switch to a soft-food diet. (Filing No. 83-5, Aff. TSCI Director of Nursing Sara Allen ¶ 6.)[3]

21.    Plaintiff's institutional medical records, which include Plaintiff's weight measured on a monthly basis, indicate that since 2014, Plaintiff has never been underweight according to the Centers for Disease Control and Prevention guidelines. (Filing No. 83-5, Aff. TSCI Director of Nursing Sara Allen ¶ 5.)

**B.  Facts Regarding Defendants CCS & Ogden**

22.    Defendant CCS is a private company that previously contracted with the NDCS to provide medical services at the TSCI. (Filing No. 44-1, Decl. W. Colton Cline ¶¶ 4-6.)

23.    Since approximately 2005, defendant Dr. Ogden has contracted with defendant CCS to provide dental services, including services to inmates at the TSCI.

---

[3]Plaintiff does not offer evidence creating a dispute as to this statement of fact. Rather, he simply asserts that serving soft-food diets to inmates who are spending life in prison is "both unreasonable and absurd," and that such a diet is "not appetizing, unpalatable and insufficient as compared to regular meal items." (Filing No. 89 at CM/ECF p. 8.)

(Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 2.)

24.    Within the last year, CCS terminated its contract to provide services at the NDCS, and July 24, 2017, was the last day CCS provided services at the TSCI. (Filing No. 44-1, Decl. W. Colton Cline ¶¶ 5-6.)

25.    Because CCS terminated its contract to provide medical services at  the TSCI, Dr. Ogden's contract with CCS to perform dental services at the TSCI also terminated, and his last day working at the TSCI was July 24, 2017. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶¶ 3-4.)

26.    While working at the TSCI, Dr. Ogden provided dental services to Plaintiff on several occasions. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 6.)

27.    In Dr. Ogden's opinion, Plaintiff is in generally poor dental health, as many of his teeth are missing or worn down, and he has significant bone loss in his jaw. Due to the structure of Plaintiff's mouth, his upper and lower teeth tend to come into direct contact with one another. Plaintiff also has had porcelain crowns in place for many years, which Dr. Ogden thinks have worn down Plaintiff's lower teeth. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 7.) Plaintiff disagrees with the source of his "worn down" lower teeth, maintaining that Dr. Ogden himself ground down Plaintiff's lower teeth. (Filing No. 89 at CM/ECF p. 3.)

28.    As part of the treatment Dr. Ogden provided, he oversaw the provision of a full upper denture to Plaintiff on or about July 20, 2014. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 8; Filing No. 1 at CM/ECF p. 4.)

29.    Following the provision of a denture to Plaintiff, Dr. Ogden continued to treat Plaintiff and adjusted the denture as necessary to meet Plaintiff's dental needs. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 8; Filing No. 1 at CM/ECF p. 4.)

30.     Dr. Ogden concluded that the denture provided to Plaintiff was appropriate and adequate for Plaintiff's medical needs, and that the continued use of the denture as provided did not pose any risk of harm to Plaintiff. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 9.)

31.     After receiving his denture, Plaintiff asked Dr. Ogden about dental implants and indicated that he wanted to receive dental implants. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 10; Filing No. 1 at CM/ECF pp. 4-5, 22.)

32.     Dr. Ogden informed Plaintiff that he did not believe dental implants were necessary for Plaintiff, and that he was not sure whether implant surgery could be done in Plaintiff's case. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 11.)[4]

33.     Dr. Ogden told Plaintiff that an oral surgeon would be better able to determine whether dental implant surgery could be done in Plaintiff's case. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 11; Filing No. 1 at CM/ECF pp. 4-5.)

34.     Dr. Ogden would not have been able to provide dental implants himself because he is not an oral surgeon. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶¶ 11-12.)

35.     Dental implants are not a covered benefit provided by the NDCS. Dental implants are provided to inmates only if they pay for the implants themselves. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 12; Filing No. 85-2, Decl. Jonathan J. Papik;

---

[4]Plaintiff does not properly dispute this fact. The fact that the dentist who replaced Dr. Ogden opined that Plaintiff has adequate bone to support a full upper denture is completely irrelevant to Dr. Ogden's belief that dental implants were not necessary for Plaintiff and may not work in Plaintiff's case. (Filing No. 89 at CM/ECF p. 4.)

Filing No. 85-5, Kohl's Resp. to Pl.'s Interrogs. Nos. 3, 5, 8.)[5]

36.     Dr. Ogden consulted with outside oral surgeons regarding the feasibility of dental-implant surgery for Plaintiff. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 13.)

37.     Dr. Ogden consulted with Dr. Monte Zysset regarding the feasibility of dental implant surgery for Plaintiff. Based on Dr. Ogden's description of Plaintiff's dental condition, Dr. Zysset concluded that Plaintiff would not be an ideal candidate for dental-implant surgery due to several contra-indicators, including a reduced amount of bone structure in Plaintiff's jaw and generally poor dental hygiene. (Filing No. 85-7, Decl. Dr. Monte Zysset ¶¶ 4-7; Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 13.) Plaintiff disagrees that he has poor dental hygiene.

38.     In Dr. Ogden's professional medical opinion based on his own observations and consultations with outside oral surgeons, dental implants were not necessary for Plaintiff, and Plaintiff would not be an ideal candidate for dental implants. (Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 14.)

39.     Insofar as "grinding down" patients' teeth is concerned, Dr. Ogden described his practice as follows:

> The only instances in which I would ever "grind" teeth would be to polish and smooth the enamel following the breaking or chipping of a tooth, restoration, or to adjust a tooth's occlusion. To the extent I did this with Plaintiff, I did so in good faith, in the exercise of medical judgment and in accordance with the appropriate standard of care.

---

[5]Plaintiff's belief that this policy would change if implants were deemed medically necessary does not create a dispute of fact. (Filing No. 89 at CM/ECF p. 4.)

(Filing No. 85-1, Decl. Ronald Ogden, DDS ¶ 15.)[6]

## III.  DISCUSSION

### A.  Deliberate Indifference to Serious Medical Needs

To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate-indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"For a claim of deliberate indifference, 'the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)); *see also Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (a prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment).

---

[6]Plaintiff disagrees with Dr. Ogden's testimony. However, he presents no evidence in support of his disagreement, other than an alleged hearsay statement by another dentist who supposedly said he "didn't  know why Dr. Ogden would do that (grind off healthy teeth)." (Filing No. 89 at CM/ECF p. 5.) *State of Neb. ex rel. Nelson v. Cent. Interstate Low-Level Radioactive Waste Comm'n*, 26 F.3d 77, 80 (8th Cir. 1994) ("A party opposing a summary judgment motion cannot simply rely on allegations, but must come forward with specific evidence establishing that there is a genuine issue fact for trial.").

"The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007). The Eighth Circuit has held that prison medical professionals do not act with deliberate indifference where they do not ignore a prisoner's complaints, but exercise independent medical judgment and attempt to treat them in a manner other than the precise manner the prisoner requests. *See Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (granting summary judgment to medical defendants who did not ignore inmate's complaints, but saw inmate on several occasions and tried numerous treatments); *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors were not deliberately indifferent where they treated prisoner on numerous occasions and offered sensible medication and treatment).

## 1. Objectively Serious Medical Need

Plaintiff's mere desire for dental implants instead of the dentures that were prescribed to him does not create an objectively serious medical need for Eighth Amendment purposes. An objectively serious medical need is "one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481 (8th Cir. 2008) (citations and quotations omitted). Furthermore, where a particular course of treatment sought is medically unnecessary, there is no objectively serious medical need under the Eighth Amendment. *Roe v. Crawford*, 514 F.3d 789, 801 (8th Cir. 2008) (elective, non-therapeutic abortion did not constitute serious medical need for purposes of Eighth Amendment); *Ross v. Carpenter*, No. 3:15-CV-03013, 2016 WL 3223620, at *6 (D.S.D. June 8, 2016), *aff'd*, 676 F. App'x 612 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 378 (2017) (without showing that medical procedure was medically necessary, inmate's allegation that procedure was necessary was simply disagreement with treatment decision, which does not constitute constitutional violation); *Ramirez v. United States*, No. CIV. 11-2931, 2013 WL 646238, at *6 (D. Minn. Feb. 4, 2013),

*report and recommendation adopted*, [No. 11-CV-2931, 2013 WL 646322 (D. Minn. Feb. 21, 2013)](#) (letter from outside physician that did not state procedure was medically necessary failed to demonstrate objectively serious medical need for purposes of Eighth Amendment).

Here, Plaintiff has furnished no evidence that he has a diagnosed medical need for dental implants or that the need for such implants would be obvious to a layperson; rather, he has merely alleged that implants would have been more effective than the dentures he was given. The desire for an alternative treatment, however, does not rise to the level of a serious medical need. *[Dulany, 132 F.3d at 1240](#)* ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment.").

The evidence here shows that Dr. Ogden, Dr. Kohl, Dr. Wellensiek, Dr. Sasek, and Dr. Smith all concluded that dental implants were not medically necessary in Plaintiff's case; the denture treatment provided to Plaintiff was medically appropriate; and, in any event, Plaintiff would not be a good candidate for dental implants. Other courts have routinely found that dental implants are not a medical necessity and a plaintiff cannot show that a defendant violated his constitutional rights by not providing them. *See, e.g., [Diaz v. Chandler](#), No. 14 C 50047, 2016 WL 1073103, at *11, *18 (N.D. Ill. Mar. 18, 2016)* (dental implants were medically unnecessary for plaintiff); *[Reaves v. Voglegesang](#), No. 5:10-CV-044-BG, 2010 WL 8445306, at *4 (N.D. Tex. Nov. 23, 2010)*, *report and recommendation adopted*, No. 5:10-CV-00044-C, [2012 WL 666205 (N.D. Tex. Feb. 29, 2012)](#), *aff'd*, [517 F. App'x 233 (5th Cir. 2013)](#) (dental implants were not necessary to treat a serious medical need); *[Hawkins v. Mahoney](#), No. 04-07-H-DWM, 2006 WL 2587753, at *7 (D. Mont. Sept. 5, 2006)* (dental implants considered high-end treatment by organized dentistry standards and medically unnecessary for plaintiff); *[Mason v. Angelone](#), No. CIV.A.7:01-CV-309, 2003 WL 23312780, at *3 (W.D. Va. Mar. 31, 2003)*, *aff'd*, [71 F. App'x 283 (4th Cir. 2003)](#) (plaintiff had no medical need for dental implants). *Cf.*

*Birdsell v. United Parcel Service of America, Inc.*, 94 F.3d 1130, 1133-34 (8th Cir. 1996) (affirming district court's holding that ERISA plan administrator reasonably concluded dental implants to be medically unnecessary).

Therefore, Plaintiff's Eighth Amendment claim fails as a matter of law because Plaintiff cannot demonstrate a serious medical need for dental implants. *Roe*, 514 F.3d at 801 (no objectively serious medical need under the Eighth Amendment where treatment sought was medically unnecessary).

## 2. Deliberate Disregard of Serious Medical Needs

Even if Plaintiff could show a serious medical need for dental implants, the evidence does not support the conclusion that any of the defendants knew of a substantial risk to Plaintiff's health if he were denied such implants and deliberately disregarded that risk through actions that were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *See Dulany*, 132 F.3d at 1241.

Even though none of the defendants believed dental implants were a medical necessity for Plaintiff, they spent a considerable amount of time evaluating Plaintiff's options and rendering treatment. For example, Dr. Ogden provided and repeatedly adjusted Plaintiff's dentures and consulted with oral surgeons regarding Plaintiff's request for dental implants, even though Dr. Ogden was not permitted to provide implants and he believed them to be unnecessary in Plaintiff's case. In 2014, when Plaintiff complained about his dentures not fitting properly, Dr. Ogden adjusted them nine different times. In 2015 and 2016, when Plaintiff contacted Defendant Kohl, the Medical Director for NDCS at the time, regarding his desire for dental implants, Kohl looked into the matter, determined that dental implants were not medically necessary, and instructed Plaintiff to work with TSCI dental staff to find an alternative solution to his denture problems. Dr. Sasek treated the Plaintiff in 2017 and also realigned his dentures to improve their fit. Dr. Wellensiek treated the Plaintiff in 2017 and

determined that Plaintiff should be provided with a new upper denture and a partial lower denture, which Dr. Smith offered to Plaintiff in November of 2017.

Further, Plaintiff has failed to present evidence establishing that any "grinding" of his teeth by Dr. Ogden was not for the purpose of polishing or smoothing enamel following the breaking or chipping of a tooth or to adjust a tooth's occlusion, as is Dr. Ogden's normal practice. Nor has Plaintiff created a genuine issue of material fact as to Dr. Ogden's testimony that he provided such treatment in good faith, in the exercise of medical judgment, and within the appropriate standard of care.

At most, Plaintiff's assertions show a difference of medical opinion, not a genuine issue of material fact precluding summary judgment. *Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) ("[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.") (internal quotation marks and citation omitted); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

In short, Defendants did not ignore Plaintiff's complaints, but provided constant care in the exercise of their professional judgment. This is not deliberate indifference. *Allard*, 779 F.3d at 772 (prison medical staff was entitled to summary judgment because even if Plaintiff was misdiagnosed, staff did not ignore plaintiff's complaints or overall condition, but was constantly responsive to plaintiff's complaints and provided numerous examinations, treatments, and potential remedies); *Logan*, 119 F.3d at 649-50 (prison doctors were not deliberately indifferent where they treated

prisoner on numerous occasions and offered sensible medication and treatment).[7]

### 3. Defendants Frakes & Mathews in Their Individual Capacities

Because there is no evidence that defendant Frakes, Director of the NDCS, directly and personally participated in Plaintiff's dental treatment, or the alleged lack thereof, Plaintiff's § 1983 claim against him must be dismissed.[8] *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (prison supervisors cannot be held liable under § 1983 on a theory of respondeat superior); *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992) (personal involvement of the named defendant is an essential element of any § 1983 claim because the doctrine of respondeat superior does not apply to actions brought under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985) (claim not cognizable under § 1983 because plaintiff did not allege defendant was personally

---

[7]Other courts have found that the prescription of dentures instead of dental implants does not constitute deliberate indifference. *See, e.g.*, *Evins v. Curry*, No. C 08-2537 CW (PR), 2010 WL 476678, at *7 (N.D. Cal. Feb. 3, 2010) (no deliberate indifference where defendants determined dentures were adequate for inmate instead of dental implants); *Silverbrand v. Woodford*, No. CV 06-3253-R(CW), 2010 WL 3635780, at *8 (C.D. Cal. Aug. 18, 2010), *report and recommendation adopted*, No. CV 06-3253-R(CW), 2010 WL 3635303 (C.D. Cal. Sept. 16, 2010) ("[T]he Eighth Amendment does not require . . . Plaintiff to be provided with dental implants, when state policy and state practice have provided an alternative treatment that is constitutionally acceptable, however inferior Plaintiff may find it to be.").

[8]Prison supervisors can incur liability when "their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (internal quotation marks and citation omitted). But such liability requires the supervisor to know that the prisoner's serious medical needs are not being adequately treated, and to remain indifferent. *Id.*; *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye [to it].") (internal quotation marks and citation omitted). Because I have concluded that (1) Plaintiff has not demonstrated a serious medical need and (2) Plaintiff was adequately treated, defendant Frakes cannot be liable under this theory.

involved in or had direct responsibility for incidents that injured him).

Likewise, defendant Mathews, ADA Coordinator for the NDCS, is not a dentist or medical provider. She has no authority to provide medical or dental treatment to the Plaintiff, and she cannot be held liable for the medical defendants' diagnostic and treatment decisions. *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (because prison treatment director and warden lacked "medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [the plaintiff] to a doctor to treat his shoulder injury"); *Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("'if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [the plaintiff's] medical care'") (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)).

Therefore, summary judgment must also be granted in favor of defendants Frakes and Mathews.

## 4. NDCS Defendants in Official Capacities

Beyond the fact that I have found no constitutional violation for which Plaintiff is entitled to any type of relief, Plaintiff's claim for monetary relief against defendants NDCS and Frakes, Kohl, and Mathews in their official capacities is also barred by the Eleventh Amendment. The Eleventh Amendment bars claims for damages by private parties against a state and its agencies or departments. *See Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446-47 (8th Cir. 1995); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)* ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citation omitted). Any award of retroactive monetary relief payable by the state, including for back pay or

damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *Egerdahl*, 72 F.3d at 618-19. Here, there is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Accordingly, Plaintiff's claim for money damages against defendants NDCS and Frakes, Kohl, and Mathews in their official capacities is barred by the Eleventh Amendment.

### 5. Qualified Immunity

Defendants in their individual capacities argue that they are entitled to qualified immunity as to Plaintiff's claim for money damages. As discussed above, the court has decided that Defendants are entitled to summary judgment on the merits of Plaintiff's deliberate-indifference claim. "[I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. This is not to say, however, the defendant official is entitled to qualified immunity. Rather, if no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim." *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) (citations omitted). Alternatively, because there was no constitutional violation, each defendant is entitled to qualified immunity. *See Payne v. Britten*, 749 F.3d 697, 707 (8th Cir. 2014) ("For example, a district court could begin and end with the first question, granting qualified immunity because there was no constitutional violation.").

## B. Policy or Custom of Deliberate Indifference

Plaintiff claims that CCS had a policy or custom of deliberately disregarding state prisoners' objectively serious dental needs. Assuming that its provision of dental services to Plaintiff at the TSCI constituted acting under the color of state law for purposes of section 1983, "a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) (citing *Monell v. Department*

*of Social Servs.*, 436 U.S. 658, 690 (1978)).

To establish "custom" liability of a local government entity under § 1983 for failure to provide medical care, the plaintiff must demonstrate (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees, (2) deliberate indifference to, or tacit authorization of, such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct, and (3) the custom was a moving force behind the constitutional violation. *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Similarly, a policy that results in inadequate treatment is not unconstitutional unless it evinces deliberate indifference to serious medical needs. *See Jenkins v. Cty. of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009).

The claims against CCS fail as a matter of law because, as discussed above, there is no underlying constitutional violation. Even if there were a constitutional violation, CCS would be entitled to summary judgment because there is no evidence that any constitutional violation occurred as a result of a custom or policy of CCS. CCS is therefore entitled to summary judgment.

## IV.  PLAINTIFF'S MOTIONS

Plaintiff has filed several miscellaneous motions which will be denied for the reasons discussed below.

•Supplemental Pleadings; Motion for Permission to Add Recent Information; Motion for an Order to Preserve Evidence for Trial (Filing No. 67)

This Motion will be denied because it violates the court's prior orders, which prohibited Plaintiff from filing any further motions to amend the pleadings. (Filing No. 56, Revised Order Setting Schedule for Progression of Case ¶ 2; Filing No. 55 at CM/ECF p. 8 ("Plaintiff shall not file any additional

motions to amend his complaints.").) Plaintiff's Motion to Preserve his current upper complete denture as evidence for trial will be denied as moot because there will not be a trial.

•Letter Requesting Kohl's Answers to Plaintiff's Interrogatories (Filing No. 71)

Plaintiff's request will be denied as moot because Plaintiff admits he received Kohl's answers just after filing the letter. (Filing No. 76, Pl.'s Br. at CM/ECF p. 1.)

•Motion to Compel More Definite & Precise Answers to Interrogatories from Dr. Ronald Ogden, DDS, and Correct Care Solutions (Filing No. 75)

This Motion will be denied because: (1) Interrogatory Nos. 26 and 27 seek information that is either irrelevant or overly broad and not proportional to the needs of the case[9]; (2) Interrogatory No. 28, which asks whether there is a "written or unwritten policy or custom in which it is understood by Correct Care Solutions employees that they are to make cost conscious decisions when providing medical and dental care to inmates," is overbroad because it asks Defendants to relay all of its employees' subjective understanding and, even if there were such a policy or custom, it was not unconstitutional unless it evinced deliberate indifference to serious medical needs, *Jenkins v. Cty. of Hennepin, 557 F.3d 628, 633-34 (8th Cir. 2009)*, which it did not, as decided above; (3) Interrogatory No. 29 is argumentative, and therefore improper, because it assumes CCS's improper conduct and requests and explanation for such

_____

[9]*See, e.g., Allen v. Zavaras, 2010 WL 1348748, at *2 (D. Colo. March 30, 2010)* (number of lawsuits against defendants was not relevant to whether defendants acted with deliberate indifference in this case); *Sattari v. Citi Mortg., 2010 WL 4782133, at *3 (D. Nev. Nov. 17, 2010)* (number of lawsuits filed against defendant was irrelevant and unreasonably broad).

conduct[10]; and (4) Interrogatory Nos. 11, 40, 46, 47, and 48 were answered.[11]

•Motion for Leave to File New Discovered Evidence and Motion to Preserve Evidence for Trial (Filing No. 77)

Although Plaintiff states that he "is not seeking leave to file Supplemental Pleadings or to Amend the Pleadings," Plaintiff is seeking to do just that because the "new information" contained in Plaintiff's Motion consists of additional allegations that should have been included in his three Complaints. Accordingly, Plaintiff's Motion will be denied because it violates the court's prior orders, which prohibited Plaintiff from filing any further motions to amend the pleadings. (Filing No. 56, Revised Order Setting Schedule for Progression of Case ¶ 2; Filing No. 55 at CM/ECF p. 8 ("Plaintiff shall not file any additional motions to amend his complaints.").) Plaintiff's Motion to Preserve his dental X-rays as evidence for trial will be denied as moot because there will be no trial.

•Motion to Compel More Definite & Precise Answers to Interrogatories from Dr. Randy T. Kohl (Filing No. 79)

This Motion will be denied because defendant Kohl answered the

_____

[10]*Zadrozny v. Bd of Trustees Dist. No. 508*, 1991 WL 66075, at *1 (N.D. Ill. Apr. 24, 1991) (finding that argumentative interrogatories were improper); *see also V.B. v. Advanced Bionics, LLC*, 2013 WL 12094316, at *4 (S.D. Fla. Jan. 3, 2013) (denying motion to compel party to respond to interrogatory that "assumes facts").

[11]"The purpose of a motion to compel discovery is not to challenge the truthfulness of the response but rather to compel a party to *answer* the interrogatory." *Annabel v. Heyns*, 2014 WL 1207802, at *1 (E.D. Mich. March 24, 2014) (emphasis in original). When a party does so, "there is nothing for the court to compel." *Id.*; *see also Hickman v. Silva*, 2012 WL 4973041, at *2 (S.D. Tex. Oct. 17, 2012) (a party's "quibble[] with the veracity of the response … is not a basis for a motion to compel").

disputed Interrogatory Nos. 1, 2, 8, and 9. "The purpose of a motion to compel discovery is not to challenge the truthfulness of the response but rather to compel a party to *answer* the interrogatory." *Annabel v. Heyns*, 2014 WL 1207802, at *1 (E.D. Mich. March 24, 2014) (emphasis in original). When a party does so, "there is nothing for the court to compel." *Id.*; *see also Hickman v. Silva*, 2012 WL 4973041, at *2 (S.D. Tex. Oct. 17, 2012) (a party's "quibble[] with the veracity of the response … is not a basis for a motion to compel"). Kohl properly objected to Interrogatory No. 5, which asks where the money comes from for the NDCS to treat inmates with hepatitis C, as irrelevant.

•Motion to Designate Five Witnesses as Expert Witnesses (Filing No. 86)

      This Motion will be denied as moot because there will be no trial.

•Motion for Leave to File New Discovered Evidence (Filing No. 87)

      This Motion requests that the court consider an Internet article provided by Plaintiff's family member that asserts that zinc in denture adhesives can cause neuropathy, which Plaintiff now claims to have. Plaintiff's Motion will be denied because the article is inadmissible hearsay; the article is irrelevant to the claims contained in Plaintiff's three Complaints; and because Plaintiff's purported new claim that a product he used caused him personal injury is an action sounding in tort. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

•Renewed Motion for Appointment of Counsel (Filing No. 92)

      This Motion will be denied as moot because this Memorandum and

Order and accompanying Judgment dispose of this case.

•Motions for Leave to File Newly Discovered Evidence (Filing Nos. 93 & 99)

Plaintiff's Motions to file new "evidence" regarding his alleged zinc-induced injury will be denied because Plaintiff is simply seeking to advise the court of new factual allegations beyond the deadline to amend his Complaints; these allegations relate to a tort claim not actionable under 42 U.S.C. § 1983; and the allegations are irrelevant to the claims contained in Plaintiff's three Complaints.

Accordingly,

IT IS ORDERED:

1.    Defendants' Motions for Summary Judgment (Filing No. 81; Filing No. 84) are granted;

2.    The pending Motions filed by Plaintiff (Filing Nos. 67, 71, 75, 77, 79, 86, 87, 92, 93, 99) are denied;

3.    Judgment shall be entered by separate document.

DATED this 11th day of May, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge